76193. TOMMY NOBIS CENTER et al. v. BARFIELD.
(370 SE2d 517)

McMURRAY, Presiding Judge.

The principal question for decision in this workers' compensation case is whether claimant was an "employee" within the meaning of the Act. The employer, Tommy Nobis Center, Inc., is a non-profit corporation which trains handicapped persons participating in a Job Training Partnership Act ("JTPA") program. It takes the position that claimant, a participant in such a program, was a "trainee" — not an "employee" — and that, therefore, he was not entitled to workers' compensation protection.

Claimant, a 52-year-old man, was severely injured in an automobile accident in 1982. (The accident was not job related.) He underwent surgery for the replacement of his right hip (in 1983 and again in 1985) as a result of that accident. In the summer of 1985, claimant enrolled in a JTPA (29 USCA § 1501 et seq.) program at the Tommy Nobis Center (hereinafter "Center"). The program was to last for seven weeks.

Upon enrollment in the program, claimant signed a "Contract for JTPA Participants" which reads, in part: "I am in the program because I want a job. I understand that at the end of this program I will be placed on a job. I understand that the production work at the Tommy Nobis Center is part of my training program and I will do my best on the job I am placed in." He also signed an agreement entitled "JTPA — Meals, Transportation, Income." It reads: "I understand that I will receive $100.00 per week for 30 hours a week if I am present and participating for 30 hours a week. $3.33 per hour will be deducted if I am not present or am present but not participating. . . . I will provide for my own meals from the income received above. . . . I will be utilizing the Tommy Nobis Center bus. I understand the cost is $15.00 per week, whether or not I am absent during that time because a slot will be reserved for me."

On his first day at the Center, claimant was given classroom instruction concerning job search readiness. Thereafter, claimant was

placed on an assembly line where he was required to box plastic trash bags. (One day claimant performed a different task — he stuffed envelopes.) Periodically, claimant received additional instruction in the classroom. Claimant continued his assembly line work until he was "terminated" by the Center in the fall of 1985.

During his stay at the Center, claimant was continuously supervised and evaluated by the Center's regular employees. The employees observed and noted claimant's job attitude and ability to function in a work environment. The goal of the Center was to be able to recommend claimant to a prospective employer.

The Center received monies from outside sources for the assembly line work performed by claimant and others enrolled in the JTPA program. In turn, the Center gave claimant $100 per week. Taxes were not withheld from claimant's pay.

Taxes were withheld from the wages paid to regular employees of the Tommy Nobis Center. These employees were paid on an hourly, piecework or annual basis. Some of the "regular" employees were "graduates" of the JTPA program.

On September 17, 1985, claimant slipped as he attempted to board the Center's bus following his work day. Claimant fell on his right leg. As a result of claimant's fall, yet another hip replacement was required to be performed (in January 1986). Claimant has been totally disabled since the performance of that surgery.

In May 1986 a hearing was held upon claimant's application for workers' compensation benefits. Following the hearing, the administrative law judge determined that claimant was an employee of the Center and that he sustained a compensable injury when he slipped and fell on September 17, 1985. He also determined that the defense of the claim was unreasonable. Accordingly, attorney fees were assessed against the employer/insurer pursuant to OCGA § 34-9-108 (b). The board adopted the decision of the administrative law judge and the superior court affirmed. We granted the discretionary appeal application of the employer/insurer. *Held*:

1. Whether a participant in a JTPA program is entitled to workers' compensation benefits is a question of State law. 29 USCA § 1553 (3). (Compare the treatment afforded Comprehensive Employment and Training Act ("CETA") participants who were "assured of workers' compensation." 29 USCA § 848 (a) (4); Larson, Law of Workmen's Compensation, § 47.33.) Thus, we look to our Workers' Compensation Act to determine whether claimant was an "employee" within the meaning of the Act. In pertinent part, OCGA § 34-9-1 (2) reads: " 'Employee' means every person in the service of another under any contract of hire or apprenticeship, written or implied, except a person whose employment is not in the usual course of the trade, business, occupation or profession of the employer . . ." Was

claimant an "employee" within this definition of the Act?

"The question of whether a person is an employee is one of fact, and, where there is any evidence to sustain the board's finding of fact, the trial court should not interfere. *Golosh v. Cherokee Cab Co.*, 226 Ga. 636 (176 SE2d 925) (1970); *Ocean Accident & Guarantee Corp. v. Farr*, 180 Ga. 266 (178 SE 728) (1934)." *Goolsby v. Wilson*, 150 Ga. App. 611, 612 (258 SE2d 216). "In determining whether or not the relationship of master and servant prevails in a compensation case, the same principles that exist under the common law obtain." *Travelers Ins. Co. v. Clark*, 58 Ga. App. 115, 121 (197 SE 650). The chief test to be applied is "whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work . . ." *Brewer v. Pacific Employers Ins. Co.*, 95 Ga. App. 270, 272 (97 SE2d 643). Any doubt about the claimant's status as an employee must be resolved in his favor. *Unigard Mut. Ins. Co. v. Hornsby*, 134 Ga. App. 157, 159 (213 SE2d 538).

The facts demonstrate that in addition to receiving classroom instruction from the Center, claimant performed work for the Center. In performing the work, claimant was subject to the Center's supervision and control. Claimant was paid so long as he participated in the Center's program activities and the Center was paid from outside sources for the work which claimant performed on its behalf. Given these facts, it cannot be said that the superior court erred in affirming the board's finding that claimant was an employee of the Center. See *Grant v. Blazer Coordinating Council*, 267 A2d 568 (111 N.J. Super. 125) (1970); *State Subsequent Injuries Fund v. Indus. Accident Comm.*, 16 Cal.Rptr. 323 (1961). After all, our Workers' Compensation Act "must be construed reasonably and liberally with a view of applying the beneficent provisions of the statute so as to effectuate its purposes, and to extend them to every class of workman and employee that can fairly be brought within the provisions of the act." *Lee v. Claxton*, 70 Ga. App. 226, 228 (28 SE2d 87).

*Overton v. Rochambeau School*, 396 NYS2d 78 (58 AD2d 694) (1977), upon which the employer/insurer relies, is inapposite. In that case, the board denied claimant benefits on the ground that he was a student, not an employee. Affirming the board's decision, the *Overton* court observed that it was a *factual determination* supported by the evidence. In the case sub judice, that factual determination was adverse to the employer/insurer's position.

2. "While the matter of whether the employer of the insured has defended a claim without reasonable grounds and is thus liable for attorney fees under Code Ann. § 114-712 [now OCGA § 34-9-108 (b)] is a factual issue for determination by the board, *Meeks v. Travelers Ins. Co.*, 119 Ga. App. 569 (167 SE2d 927); *McCoy v. J. D. Jewell, Inc.*, 123 Ga. App. 175 (179 SE2d 654), the finding that the matter

was defended without reasonable grounds must be supported by the evidence, and there must be supporting evidence upon which to make the finding, just as is the case of other findings upon which the award is made." *Pacific Employers Ins. Co. v. Peck,* 129 Ga. App. 439, 441 (200 SE2d 151).

Having reviewed the evidence, we are of the opinion that the employer/insurer's defense was not unreasonable. A novel, serious question was raised with regard to claimant's employment status as a JTPA participant.

Claimant was enrolled in a seven-week JTPA program. Through that program, claimant was given instruction to enable him to seek future employment. His attitude and work habits were evaluated with that goal in mind. Arguably, claimant was not paid a wage; rather, he was given a training allowance (from which taxes were not withheld). In this respect, he was treated differently from the Center's "regular" employees. In our view, these facts cast legitimate doubt upon claimant's employment status and therefore afforded the employer/insurer a reasonable basis for defending the claim.

There being a reasonable basis for the employer/insurer's defense, the superior court erred in affirming that portion of the board's award finding the employer/insurer liable for attorney fees.

*Judgment affirmed in part and reversed in part. Pope and Benham, JJ., concur.*

DECIDED JUNE 2, 1988.

*Kenneth B. Donahue,* for appellants.
*Steve T. Woodman,* for appellee.